OSCAR ABBOTT v. MARION MINING COMPANY, Appellant.

Division One, March 3, 1914.

ATTORNEYS' LIEN ACT: Effective After Suit Brought but Before Judgment. An attorney who contracted with plaintiff for a contingent fee and brought suit for him before the Attorneys' Lien Act (Laws 1901, p. 46; R. S. 1909, sec. 964) went into effect, in which judgment was rendered after the act became effective, has his lien upon the judgment recovered. The act does not affect any vested right of the defendant, but merely provides a remedy by which the property of a debtor in its hands may be made available to the creditor.

Appeal from Barton Circuit Court.—*Hon. B. G. Thurman,* Judge.

AFFIRMED.

*Thomas & Hackney* for appellant.

The court erred in refusing the defendant's demurrer to the evidence. (a) The Attorney's Lien Act of February 25, 1901 (Laws 1901, p. 46), contains no emergency clause and inasmuch as the Legislature at that session adjourned March 18, 1901, the act took effect ninety days thereafter, to-wit: June 16, 1901. (b) The contract of employment between plaintiff and his attorney, Redburn, having been made previous to the taking effect of the Attorney's Lien Act and the suit having been filed May 17, 1901, one month prior to the taking effect of the act, the commencement of this suit did not have the effect of conferring any lien on the plaintiff's attorney and the first section of the Lien Act could in no sense apply. to this case. The act cannot be given a retrospective or retroactive application inasmuch as this is prohibited by the Constitution. Sec. 15, art. 11, Constitution; Young v. Renshaw, 102 Mo. App. 187; Northrup v. Hayward, 102 Minn. 307. It is a well-settled rule in this State that acts of the Legislature must be given prospective and not retrospective operation; otherwise, they are unconstitutional by the express terms of the Constitution which prohibits the passage by the Legislature of any retroactive law. Walter v. Fudge, 63 Mo. App. 56; Hough v. Woodman, 85 Mo. App. 102; Reed v. Swan, 113 Mo. 100.

*John B. Cole, A. C. Burnett, E. L. Moore* and *H. W. Timmonds* for respondent.

(1) Under the Attorney's Lien Act it is not necessary that the suit or cause of action be reduced to a verdict or judgment; the attorney's lien is upon his client's cause of action, from the commencement of the suit thereon, and if afterwards, the cause of action becomes merged into something else, the lien attaches to the thing into. which the cause of action is

merged. Taylor v. Transit Co., 198 Mo. 725. (2) The act is remedial and will be liberally construed. Wait v. Railroad, 204 Mo. 501; Conkling v. Austin, 111 Mo. App. 301; Hansen v. Railroad, 173 N. Y. 492; Wolf v. Railroad, 155 Mo. App. 143. (3) Where a percentage contract exists and a judgment has been obtained, but not become a finality, a settlement and release is made, ignoring the plaintiff's attorney's rights, the attorney's lien is not destroyed, and the amount of the lien is controlled by the settlement. Wait v. Railroad, 204 Mo. 502; Curtis v. Railroad, 118 Mo. App. 341; Railroad v. O'Connor, 153 Mo. App. 139; Hurr v. Railroad, 141 Mo. App. 222. (4) Prior to the enactment of the Attorney's Lien Act, an attorney had no lien for his services on a judgment obtained by him for his client. Young v. Renshaw, 102 Mo. App. 184; Curtis v. Railroad, 118 Mo. App. 348; Conkling v. Austin, 111 Mo. App. 292. (5) To apply the act to the case at bar does not give that act a retroactive application or retrospective operation. While the attorney's contract and the commencement of the suit antedate the day this act became effective, the judgment in this case and the settlement both are subsequent to that time and this act applies. (a) In the case of Taylor v. Railroad, 207 Mo. 495, the contract and suit both antedated the day this act went into effect, but notice was served upon the defendant and settlement was made after the act became effective and this court applied the Attorney's Lien Act, held that section one of that Act fully authorized a recovery and affirmed a judgment in favor of the plaintiff's attorney. (b) In the case of Young v. Renshaw, 102 Mo. App. 173, the contract and judgment both antedated the date this act went into effect and was for that reason alone reversed. (6) The act does not give the attorney a new cause of action—his cause of action for services existed at common law—but gives a remedy for its enforcement and an act relating only to the remedy of an existing cause

of action is not retrospective. Gibson v. Railroad, 225 Mo. 473; Clark v. Railroad, 219 Mo. 531; State ex rel. v. Taylor, 224 Mo. 393; Haarstick v. Gabriel, 200 Mo. 237; O'Bryan v. Allen, 108 Mo. 227; Porter v. Mariner, 50 Mo. 364. (7) The Attorney's Lien Act is a new remedial statute. Caldwell v. Ryan, 210 Mo. 41.

BROWN C.—This is an action for damages for personal injury alleged to have been suffered by plaintiff December 26, 1900, while working for defendant in its mine in Jasper county, Missouri. The petition was filed in the Jasper Circuit Court and summons sued out May 17, 1901. The venue was changed to Barton county, where the cause was tried September 10, 1901, resulting in a verdict and judgment for plaintiff for three thousand dollars. Defendant appealed to the Kansas City Court of Appeals, and on December 17, 1902, the case was settled without the consent of the plaintiff's attorneys, for nine hundred and fifty dollars paid plaintiff, who gave a full receipt and release therefor. The judgment was afterwards reversed and the cause remanded to the Barton Circuit Court, where it proceeded to trial for the benefit of the attorneys interested, who intervened for that purpose, resulting in a verdict and judgment for four hundred and seventy-five dollars in their favor, from which this appeal is taken by defendant.

On April 6, 1901, the plaintiff made an agreement in writing with F. M. Redburn, an attorney at law, which was signed by both the parties, by which it was agreed between them that Redburn should bring and prosecute the suit to final determination, and that if the cause should be tried Mr. Redburn should receive for his services one half the money realized. All the intervenors claim under this contract.

In its pleadings, instructions and motion for a new trial, the appellant insisted upon the point that in its application to this case, the Attorneys' Lien Act

of February 25, 1901, is retrospective in its operation and therefore in violation of section 15 of article 2 of the Constitution of the State.

## OPINION.

The only questions raised by the appellant relate to the application of the Attorneys' Lien Act of Febru

**Attorneys' Lien Act: Effective After Suit Brought but Before Judgment.** ary 25, 1901 (Laws 1901, p. 46) to this case. The contract under which the amount of the recovery was liquidated, was made April 6, 1901; this suit was instituted May 17, 1901; and the act referred to, which first gave the attorney a lien upon the cause of action of his client, took effect June 16, 1901. Under these circumstances the appellant insists that to apply the provisions of the act in this case would be to give it retrospective operation, in violation of article 2, section 15, of the State Constitution. It contends that while this court, in Taylor v. Railroad, 207 Mo. 495, a similar case, upheld in general terms the constitutionality of the same act, its retrospective operation, as applied to the facts there in issue, was neither pressed upon it by counsel, nor referred to in its opinion. This is true; and in view of the argument of counsel, as well as of the authority cited by them, it is due that we should briefly state the process by which we have arrived at our conclusion.

The law under which the respondents are asking to maintain this judgment, and to which we have already referred, is found in the Revised Statutes of 1909 as section 964, and provides that "from the commencement of an action, or the service of an answer containing a counterclaim, the attorney who appears for a party has a lien upon his client's cause of action or counterclaim, which attaches to a verdict, report, decision or judgment in his client's favor, and the proceeds thereof in whosesoever hands they may come;

and cannot be affected by any settlement between the parties before or after judgment." The remedy pursued by the intervenors is not questioned. The law is plainly remedial in character, for it simply provides a remedy by which one who performs valuable services for another may have compensation for his work out of that which it has contributed to produce. In such cases the courts do not torture the language of an act to defeat its evident purpose. In this case the language is plain. The lien which it creates attaches itself to the cause of action at each instant of the time of their coexistence between the bringing of the action and its enforcement. It does not affect the relation of the defendant to the liability upon which he is sued, any more than garnishment of a contract debtor affects the contract upon which the indebtedness accrues. He is liable to respond in debt or damages, as the case may be, upon the same liability and only to the same extent as if no lien had intervened.

In Clark v. Railroad, 219 Mo. 524, the court, construing this same provision of the Constitution, said: "The retrospective laws forbidden by that instrument are laws impairing existing vested civil rights. The law must take away such vested right, or it must create a new obligation, impose a new duty, or attach a new disability in respect to gone-by transactions, in order to be retrospective and under the constitutional ban." It may be objected that this definition itself needs to be defined; that the real question is, what distinguishes a "vested civil right" from all those other rights that exist because the law permits, but which may, notwithstanding this and other constitutional provisions, be taken away at the pleasure and in the discretion of the Legislature. Laws are made to affect conditions already existing. They take hold of persons already born, and curtail or extend their permissive rights, not only with respect to their own persons, but also with respect to property they have

already acquired, not excepting from the category of such property those valuable rights which lie in contract.

The power to govern persons and things in their relations to each other, and to the state, which is the representative of all, subjecting all alike to the requirements of the general welfare, is the distinguishing attribute of sovereignty. This police power, as it is called, cannot be parcelled out or surrendered to the individual members of the political society, for without it government would be disintegrated into its original elements, and would cease to exist. All property, whether tangible or intangible, in possession or in action, consists of those rights and interests secured to the individual through the exercise of these police powers by the government. A vested right in the sense in which the term was used in the foregoing quotation is a property interest in the thing itself whether it exist in contract or possession; and it is subject to whatever burden may be imposed by the State for the general welfare; that is to say, for the enforcement and protection of the rights of all. Possibly, as in this case, one may be inconvenienced or annoyed by the process which the law gives to another for the preservation and enforcement of his right, but this is the price which one pays for his own, which may become more or less valuable, no matter which, by this deference to the general good. Laws providing and regulating remedies for the protection and enforcement of legal rights are peculiarly within that rule. It is of the very essence of good government that these remedies be not only simple and effectual but that they be uniform. It is their uniformity that makes them just; for what can be more just than that all should contribute alike of their convenience as well as of their money, to the enforcement of the laws in their favor. While the Constitution withholds from the Legislature the power to create an indebtedness out

of an incident which has been closed without such an effect under existing laws, the reasons upon which the restriction is founded do not seem to lead naturally to the conclusion that the same law for the collection of debts should not be open alike to all creditors who come within its provisions, whether the indebtedness is in existence at the time of its enactment or not. Much light is thrown upon this subject by the following Missouri cases and their citations: Peters v. Railroad, 23 Mo. 107, 111; Grannahan v. Railroad, 30 Mo. 546; Henschall v. Schmidt, 50 Mo. 454; citing Bolton v. Lansdown, 21 Mo. 399; Clark v. Railroad, supra; Gibson v. Railroad, 225 Mo. 473.

Applying these principles we are forced to the conclusion that the act in question does not affect any vested right of the defendant, but merely provides a remedy by which the property of a debtor in its hands may be made available to the creditor. The defendant has notice of the claim, the property to which it attaches is in its possession, and it is made its duty to see to its distribution to those entitled.

We are aware that in Young v. Renshaw, 102 Mo. App. 173, 187, the St. Louis Court of Appeals, without either a statement of reasons or the citation of any applicable authority, held that the lien of the attorney did not attach to a judgment rendered in favor of his client before the taking effect of the act. That case only goes to the extent of holding that where the rights of the plaintiff had been fixed by and merged in the judgment procured for him by his attorney, the passage of the act giving the latter a lien upon his client's cause of action . . . "which attaches to a . . . judgment in his client's favor," did not relate back so as to create upon the judgment a lien which had never attached to the cause of action before it had been so merged. It is not necessary for us to examine this proposition. So far, however, as the

255 Mo. 25

language of the Court of Appeals is open to the construction that the lien created by section 964, from which we have quoted, does not attach to a cause of action in existence at the time it took effect, it ought not to be followed.

The judgment is affirmed.

PER CURIAM—The foregoing opinion of Brown, C., is adopted as the opinion of the court. All the judges concur.