MISSOURI ROCK, INC., Respondent,

v.

Wilford WINHOLTZ, David Fulton, Lloyd Searcy, Howard Neth, Sue Petty and Marvin Foster, Appellants.

No. WD 31820.

Missouri Court of Appeals, Western District.

March 2, 1981.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 30, 1981.

Leary G. Skinner, Thomas E. Hankins, Kansas City, for appellants.

James L. Burgess, Berry F. Laws, III, Kansas City, for respondent.

Before PRITCHARD, P. J., and TUR-NAGE and CLARK, JJ.

CLARK, Judge.

This litigation arises out of an order by appellant Winholtz, the zoning enforcement officer for Clay County, directing that respondent, Missouri Rock, cease its rock mining and crushing business. The order was allegedly based on the expiration of a previously issued occupancy permit and the failure of Missouri Rock to apply for and obtain a special use permit. On review at the request of Missouri Rock, the order of the zoning officer was affirmed by appellants Fulton, Searcy, Neth, Petty and Foster, who are the members of the Board of Zoning Adjustment for Clay County. Missouri Rock then petitioned for review in the circuit court and obtained a judgment reversing the action of the board. This appeal followed.

The applicable facts in this case were all presented by stipulation and are undisputed. The ultimate question is whether Missouri Rock is obligated to conform to revisions in the Clay County zoning order adopted after respondent's mining and crushing business has been established and was lawfully in operation.

The use of all property in Clay County is controlled by a zoning order originally adopted in 1952 under the provisions of §§ 64.510 to 64.690 RSMo Supp. 1951. Clay County was then a class two county. Although Clay County thereafter became a class one county, the statutes and procedures relative to zoning were not thereby affected and the issues in this case require no consideration of the change in county classification. § 64.905, RSMo Supp. 1980.

Missouri Rock has operated an open cut mine and a rock crusher in Clay County on the land in question since 1975. Some mining and crushing was done on the site in 1965 by a predecessor in title but the activity was suspended between 1966 and 1975 during which time the premises were vacant. In 1974, one Jeffries, from whom Missouri Rock obtained its title, applied for and was issued a certificate of occupancy by Clay County. Such certificates were required under § 29 of the 1952 zoning order when vacant land was to be used for other than agricultural purposes. The certificate which Jeffries received was for "recovery of natural minerals" and was for a term of five years expiring July 25, 1979.

The record does not indicate whether Jeffries, who was doing business as Orrick Stone Company, actually engaged in the rock mining and crushing business, but it is agreed that Missouri Rock succeeded to whatever rights Jeffries had, including rights under the occupancy permit. Jeffries' application for the permit stated that a shop, scale house and office building would be occupied on the premises and that the land would be use for removal of limestone rock for rip-rap on the Missouri River.

At the time Jeffries received the certificate of occupancy, the subject property was zoned District A, agricultural, under the 1952 order. In October of 1974, Jeffries applied for and obtained a zoning change to District M2, heavy industry, a classification provided in § 17 of the 1952 zoning order. Uses permitted in District M2 included rock crushing but mines are not authorized. The next classification, District M3, described in § 18 of the 1952 order, covers mining operations for which a permit valid for no more than five years must be obtained. Strip or open cut mining was expressly exempted from regulation under § 18 of the zoning order, however, because of the proscription contained in § 64.560, RSMo 1969.[1]

Missouri Rock commenced its operation of open cut rock mining and rock crushing on the property in 1975. The crusher was a permitted use under the M2 zoning accomplished the previous year. The open cut mining was a permitted use because the county was denied authority by the statute to control or regulate that activity. The certificate of occupancy given to Jeffries and to which Missouri Rock succeeded was apparently regarded as some official but limited sanction of the total operation.

---

1. The applicable provision of § 64.560, RSMo 1969 states: "That nothing herein shall affect the recovery of natural resources by strip or open cut mining * * *." The statute has remained unchanged to this date.

Section 29 of the 1952 zoning order relates to certificates of occupancy and contemplates three types of certificates depending on the use to be made of the land in question: Occupancy for a building, occupancy for land and occupancy for a non-conforming use. It is only where land has been formally vacant that a certificate must be obtained and, thus, a certificate for occupancy of a building is issued only where the structure is newly built. The purpose of occupancy certificates is to enforce compliance with building and health laws and with zoning limitations on land use. A certificate for a non-conforming use was limited to applications therefor filed within twelve months of the effective date of the zoning order and was devised to document uses outside the zoning regulations.

The certificate of occupancy issued to Jeffries and the application which preceded it made no mention of rock crushing, but were concerned only with the intended mining of the limestone rock. The record is silent as to any basis for belief by Jeffries or the county that an occupancy permit was needed for open cut mining exempted by statute from county control. Even if considered to be a non-conforming use subject to registration, § 29 was not applicable because that section was by its terms limited to a period of twelve months from the effective date of the zoning order in 1952.

Moreover, § 29 makes no provision for and quite obviously does not contemplate issuance of an occupancy certificate for a period of limited duration. The certificate issued to Jeffries actually appears to have been based on confusion of § 29 with the requirements of § 18 which required a permit for mines, other than strip or open cut, in a district zoned M3 and which limited such permits to five years. A § 18 permit was not, however, available or required as to Jeffries because the mine was exempt as of the open cut method and the property was not zoned M3.

In 1977, the Missouri Supreme Court in *Ryder v. County of St. Charles*, 552 S.W.2d 705 (Mo. banc 1977) ruled that § 64.560, RSMo 1969, which had formerly prohibited county regulation of open cut and strip mining, was unconstitutional. Following this decision, Clay County moved promptly to amend its zoning order for the purpose of bringing open cut and strip mining activities within its regulatory control. The device adopted for this purpose was an extensive revision of the former § 18 which had defined and regulated uses in areas zoned District M3. The general import of the revised § 18 was to identify 29 property uses of an unusual character having particular impact on nearby property and to require special processing of applications to authorize these activities. Any use named in the revised § 18 does not accrue to a land owner as a matter of right by reason of any particular zoning classification but is to be acquired only through the defined special use permit procedure. Mines, quarries and rock crushers are included in the activities regulated by the amended § 18 which became effective July 8, 1977.

The ostensible basis for the order directing Missouri Rock to cease its quarrying and crushing business was the expiration of the certificate of occupancy originally issued to Jeffries in 1974 and not renewed. It was conceded, however, that an application by Missouri Rock to renew that certificate would be futile because occupancy of the property for rock mining and crushing would not be approved unless and until Missouri Rock first applied for and was issued a special use permit under the revised § 18 of the zoning order. Missouri Rock contends that the special use permit regulation of the zoning order is not applicable to its mining and crushing operation which predated the revision of § 18.

The parties do not directly address the question of whether Missouri Rock is obligated to secure a § 29 occupancy permit in all events and we do not reach or decide that issue. The question here is whether the pre-condition of a § 18 special use permit is valid as to Missouri Rock and may be enforced.

■ In their first point, appellants contend that Missouri Rock lacks standing to obtain judicial relief in this case because it

has not exhausted its administrative remedy. This argument is based on the premise that having failed to apply for a special use permit to operate the quarry and crusher, it is premature to assume that Missouri Rock will suffer denial of the permit or imposition of burdensome or unreasonable conditions. In effect, appellants argue that the mere requirement to apply for a permit is not alone sufficient basis to claim aggrievement.

This contention fails to recognize the substance of the administrative decision which Missouri Rock seeks to have reviewed under § 64.660.2, RSMo 1978. While the "stop order" issued by the zoning enforcement officer and affirmed by the board was based on expiration of the occupancy permit, the actual dispute unquestionably recognized by the parties was the authority of Clay County to impose the revised zoning restrictions of § 18 on the previously existing commercial enterprise of Missouri Rock. That issue was ripe for decision on judicial review. Merely because fortuitous circumstances, leniency of enforcement or considerations grounded in expediency might provide Missouri Rock a permit to continue business does not validate imposition of otherwise unlawful regulation. The issue was appropriately before the circuit court and is entitled to consideration on the merits here.

Appellants next contend that Missouri Rock is subject to the conditions and regulation of amended § 18 because no vested right in a pre-existing, non-conforming use of the rock quarry was acquired. This point is somewhat vexing because the premise is illusory.

When Jeffries first proposed to commence open cut mining of rock on the subject land in 1974, § 64.560, RSMo 1969, then in full force and effect, exempted that ac-

tivity from county zoning regulation. Neither Jeffries nor Missouri Rock required any certificate of occupancy because the county was without authority to impose zoning control and had expressly in the then § 18 of the zoning order excluded open cut and strip mining from regulation. Thus, the certificate of occupancy issued July 25, 1974, for "Recovery of Natural Minerals" conveyed no rights and was, at most, documentation of a user right which the land owner was entitled to enjoy irrespective of the general zoning order. Concomitantly, the certificate, which was without regulatory sanction, could impose no restrictions.

Appellants' point rests on the assumption that expiration of the occupancy permit terminated whatever rights Missouri Rock had to continue its mining and crushing business and similarly assumes that the permit exempted Missouri Rock from the provisions of the revised § 18 from the date of the revision in 1977 until expiration of the permit, but not thereafter. In fact, however, Missouri Rock acquired no rights by virtue of the occupancy certificate for the reasons stated and the certificate is actually irrelevant to the issues in the case.

The fundamental question is whether the continuous use of the subject land in the business of a rock quarry and associated activities both prior and subsequent to enactment of the revised § 18 of the zoning order establishes a non-conforming use exempting Missouri Rock from compliance with the special permit procedures. In ruling this question, the assumption is made that open cut mining will continue to be the method of mineral extraction and that operation of the rock crusher is an associated use requiring no independent authorization[2].

---

**2.** Section 17 of the 1952 zoning order establishes zone District M2 and lists uses permitted in that district. Among uses authorized in M2 districts by reason of that zoning are rock crushers. The record here does not indicate any later amendment to § 17. Among uses requiring a special permit under amended § 18 as revised in 1977 are "Mines * * * including the * * * crushing * * * of * * * stone * * *."

The parties here have not raised the question of whether Missouri Rock was entitled to operate the crusher without a § 18 special permit because the property was zoned District M2 or whether operation of the crusher was exempt from regulation under § 64.560, RSMo 1969, as a use auxiliary to open cut mining. We do not reach these questions. Also not briefed or argued and not considered in this opinion is the

■ The term "non-conforming use" means a use of land which lawfully existed prior to the enactment of a zoning ordinance and which is maintained after the effective date of the ordinance even though not in compliance with use restrictions. 6 Rohan, Zoning and Land Use Controls § 41.01[1] (1978). A non-conforming use is a vested property right which zoning ordinances may not abrogate. *State ex rel. Capps v. Bruns,* 353 S.W.2d 829 (Mo.App. 1962). Zoning ordinances must permit continuation of non-conforming uses in existence at the time of enactment to avoid violation of constitutional provisions preventing the taking of private property without compensation. *State ex rel. Nealy v. Cole,* 442 S.W.2d 128, 131 (Mo.App.1969). If a zoning regulation does not expressly exempt existing uses, the regulation will be construed as having only prospective effect to preserve the order from invalidity. 1 Anderson, American Law of Zoning § 6.06, at 369 (2d Ed. 1976).

■ Prior to 1977, the use by Missouri Rock of its land for open cut mining was not regulated by the Clay County zoning order because the then effective § 18 expressly disclaimed classification of this use in the districts which the zoning order created. While the statute prohibiting counties from zoning control over strip and open cut mining must be assumed to have supplied the reason for the zoning order exception, the fact remains that Missouri Rock used its property lawfully for open cut mining before 1977 because the Clay County zoning order contained no provision restricting that use.

The lawful use by Missouri Rock of its property for open cut mining was not abridged or terminated by the decision in *Ryder v. County of St. Charles, supra,* which merely held that counties were entitled to regulate strip and open cut mining by zoning if they chose to do so. It was only after Clay County amended its zoning order that it first acquired the right to

require special permits for open cut mining at which time Missouri Rock was already conducting that activity lawfully. As to strip and open cut mining, uses prior to 1977 were, of necessity, non-conforming because unregulated before that time. The amendment of § 18 must be construed as prospective only and excepting non-conforming uses to avoid unconstitutional deprivation of property interests.

For the reasons given, open cut mining by Missouri Rock on the subject land is, so long as continued in original form, a non-conforming use exempt from regulation by the amended zoning order of Clay County. Whether by certificate, permit or otherwise, the county may not impair or prohibit that right of use and enjoyment.

In a third point, appellants argue that some regulatory power is available to the county, even as to non-conforming uses, by reason of the authority to promote the public health, safety and welfare. On this account, they contend that Missouri Rock should be required to observe the special permit condition for continued operation of its quarry and that no ground for objection to this procedure lies except upon threatened restrictions shown to be burdensome, onerous or unreasonable. While it is apparent that the extent of restrictions to be imposed if and when a permit were issued is pure speculation, appellants contend that unreasonable regulatory action should not be assumed but, to the contrary, imposition of acceptable controls should be anticipated.

■ It is unnecessary here to consider what restrictions Clay County might lawfully impose on Missouri Rock's mining activity under general police powers. Revised § 18 of the zoning order does not purport to define the scope of regulation, but merely authorizes imposition of "special conditions and requirements" and, more importantly, authorizes denial of the permit without statement of cause. Section 18 vests absolute discretion in the county court to deny applicants the use of their land for any of

apparent conflict between § 17 which authorizes rock crushers in M2 districts without a special permit and § 18 which appears to require a special permit if a rock crusher is operated in conjunction with a mine.

the purposes set out in the section and recognizes no prior entitlement to a permit on any condition. The section is not a licensing regulatory measure which functions within the ambit of vested rights and the cases which appellants cite are therefore inapposite. Missouri Rock is not obligated to submit to a special permit requirement encompassing potential termination of its non-conforming use.

■ Finally, appellants complain that the trial court, after determining that Missouri Rock was entitled to continue use of its premises for open cut mining and rock crushing exempt from regulation under the amended § 18 of the zoning order, additionally adjudged the provisions of the zoning order to be void for want of statutory authority and because lacking in legally sufficient standards of application. If, as we have previously concluded, the zoning order cannot affect the non-conforming use which is the only subject of concern in this proceeding, a declaration that the zoning order is otherwise invalid generally is gratuitous and unnecessary.

Significant interests beyond the area of controversy between appellants and Missouri Rock are potentially at stake in this judgment if the amended § 18 is to be judicially struck down. Under the decision in *Oates v. Safeco Insurance Co. of America*, 583 S.W.2d 713, 719 (Mo. banc 1979), defining appropriate considerations for application of the doctrine of collateral estoppel, it is possible that strangers to this action could employ the judgment to avoid the regulatory effect of § 18 as to property far removed from and unrelated to either the land or use of Missouri Rock. This superfluous addition to the judgment serves no purpose and exceeds the determination required to dispose of the case.

■ A judgment which grants excessive relief may yet be valid if, by striking the surplusage, the remainder may be separated and treated as dispositive of the controversy. *Kennedy v. Boden*, 241 Mo.App. 86, 231 S.W.2d 862 (1950); *Poole v. Poole*, 287 S.W.2d 372 (Mo.App.1956). The part of the judgment which correctly rules the case is

entitled to affirmance if the excess matter is separable, does not affect the finality of the judgment and is otherwise a proper subject for appellate disposition within the issues framed. *Vatterott v. Gryder Motors, Inc.*, 536 S.W.2d 799 (Mo.App.1976); *Continent Foods Corp. v. National-Northwood, Inc.*, 470 S.W.2d 315 (Mo.App.1971).

Accordingly, that portion of the subject judgment which finds § 18 of the Clay County zoning order as modified by revisions adopted in 1977 to be null and void is stricken as surplus and is to be disregarded because of no significance in ruling the claim of Missouri Rock. In so doing, this court expresses no opinion as to the merits of the contentions that § 18 lacks statutory authorization or that insufficient standards of application for § 18 special permits allow unbridled administrative discretion. Such issues must await resolution another day in an appropriate case.

The judgment, so modified, is affirmed.

All concur.