Steven Anthony GANAWAY,
Plaintiff–Respondent–Cross
Appellant,

v.

DEPARTMENT OF SOCIAL SERVICES,
Intervenor–Appellant–Cross
Respondent.

Nos. WD 39575, 39600.

Missouri Court of Appeals,
Western District.

April 12, 1988.

Motion for Rehearing and/or Transfer to Supreme Court May 31, 1988.

Application to Transfer Denied July 26, 1988.

Thomas Strong, Springfield, for Ganaway.

D.B. Kammerer, Dept. of Social Services, Jefferson City, for Dept. of Social Services.

Before KENNEDY, C.J., and BERREY and COVINGTON, JJ.

BERREY, Judge.

Appeal from a decision by the Circuit Court of Boone County, Missouri, establishing the priority of competing claims to funds paid into the court by Shelter Mutual Insurance Company after a judgment had been obtained in favor of Steven Ganaway against Shelter's insured. The two competing claimants are Strong & Wooddell, P.C., the law firm which represented Ganaway, and the Missouri Department of Social Services which had expended public funds for a portion of Ganaway's medical expenses.

Steven Ganaway was involved in an automobile collision on November 15, 1981, which rendered him quadriplegic. On November 22, 1981, he hired the law firm of Gladstone and Matteson to represent him on his claims arising out of the accident. In addition to a contingency fee arrangement, the contract included a provision for repayment of expenses from out of the amount recovered. On March 4, 1982, a supplemental contingency fee contract was entered into by Ganaway, Gladstone and Matteson, and the law firm of Strong & Placzek, P.C. (now named, and hereinafter referred to as Strong & Wooddell). In October, 1982, Gladstone and Matteson withdrew as Ganaway's attorneys. Strong & Wooddell continued to act for Ganaway under the contract of March 4, 1982. Strong & Wooddell filed suit for Ganaway. Trial was commenced on the personal injury suit on November 18, 1986. On December 5, 1986, the jury returned a general verdict, assessing 90% of fault to the defendant and 10% of fault to Ganaway. After taking this apportionment into account, Ganaway's award totaled $4,050,000.

On February 27, 1987, Shelter Mutual Insurance Company paid $133,884.93 into court.[1] The division of this money is the subject of this dispute. On April 13, 1987, the Missouri Department of Social Services filed an amended petition asking the court to pay over $75,258.20 to them from the money paid into court by Shelter Mutual Insurance Company. This amount represented $36,814.98 in public assistance benefits under Medicaid and $38,443.22 paid to the University of Missouri Medical Center by the Department of Social Services on behalf of Steven Ganaway. Naturally, Ganaway's attorneys were not in favor of such a disbursement. Ganaway's answer, filed on April 20, 1987, states that the Department of Social Services' right to the funds is subordinate to the attorney's lien granted to Strong & Wooddell.

On April 23, 1987, the matter was brought before the trial court, and on May 15, 1987, the court divided the money between the two opposing claimants. The court ruled that litigation expenses are not subject to the attorney's lien created by § 484.130, RSMo 1986, thus the Department of Social Services was entitled to a pro rata share of the money, determined by the percentage of total medical expenses to the total award given by the jury. Their total award was calculated to be $1,150. Both sides have appealed from the trial court's distribution order.

The Department of Social Services appeals that part of the decision which pro rates their recovery, arguing that after the attorney's lien has been satisfied they are entitled to a full share of the money under § 208.215, RSMo 1986. Their interpretation of the statute limits the attorneys to the 40% contingency fee agreed upon in the contract of employment of March 4, 1982. This view excludes the expenses of the trial borne by the attorneys, for which the client is ultimately responsible, from the province of the lien statute.

Ganaway appeals that part of the decision which awarded $1,150 to the Department of Social Services, claiming that the expenses incurred in prosecuting the claim are included in the statutory attorney's lien and thus the claim of the Department of Social Services is subordinate to the lien. This is the correct posture to take in the instant case.

Reimbursement of the money expended by the Department of Social Services from

1. According to the pleadings, this sum represented "a partial payment of $50,000.00 on the $4.05 million judgment, plus payment of accrued interest on said judgment from December 6, 1986, through February 27, 1987."

a recovery resulting from a judgment in a legal action is governed by § 208.215, RSMo 1986. This right to reimbursement is limited by § 208.215.6, RSMo 1986, which states, "[t]he right of subrogation provided by this section is subordinate to the lien provided by section 484.130, RSMo, or section 484.140, RSMo, relating to an attorney's lien...." The attorney's lien is a creature of statute. In the present case § 484.130, RSMo 1986, is applicable. It provides:

> The compensation of an attorney or counselor for his services is governed by agreement, express or implied, which is not restrained by law. From the commencement of an action or the service of an answer containing a counterclaim, the attorney who appears for a party has a lien upon his client's cause of action or counter-claim, which attaches to a verdict, report, decision or judgment in his client's favor, and the proceeds thereof in whosesoever hands they may come; and cannot be affected by any settlement between the parties before or after judgment.

▮▮▮ A liberal construction should be given to the statute so that attorneys are afforded protection in enforcing their liens. *Downs v. Hodge*, 413 S.W.2d 519, 523 (Mo. App.1967). An attorney's lien statute is remedial in nature because, "it simply provides a remedy by which one who performs valuable services for another may have compensation for his work out of that which it has contributed to produce." *Abbott v. Marion Mining Co.*, 255 Mo. 378, 164 S.W. 563, 564 (1914). The plain language of such a statute should not be tortured to defeat its obvious purpose. *Id.*

▮▮▮ The plain language of § 484.130, RSMo 1986, deals with the compensation of an attorney for his services. The word "compensation" is defined as, "payment for value received or service rendered" and further as "the act or action of making up, making good, or counterbalancing." *Webster's Third New International Dictionary*, 1971, p. 463. Furthermore, "[a]s a general rule, the amount of a charging lien, is to be measured by the value of the

attorney's services." 7A C.J.S. *Attorney & Client*, § 364 (1980). Thus, "[a]n attorney is entitled to a lien for any legitimate expense incurred by him in the prosecution of an action, ... not necessarily limited to taxable items of costs and disbursements, but may include any expenditure which may properly be made in furtherance of the prosecution of an action...." *Id.* Strong & Wooddell expended both time and money furthering Ganaway's cause. Both of these elements were necessary for Ganaway to proceed. These expenditures were part of the service Strong & Wooddell provided to Ganaway. As such, compensation for these services would necessarily include repayment, a making good on these expenses. The attorney did not advance money for expenses without thought of getting it back. The contract of March 4, 1982, clearly gave the ultimate responsibility for expenses to Ganaway, although it was silent on whether the repayment was to be made from the recovery. It was clearly understood by Ganaway that such was to be the case and he so testified. Thus, the requisite elements for the lien statute are present. Expenses are compensable to the attorney and the compensation in the instant case is governed by an agreement which is not restrained by law.

The Department of Social Services relies heavily on dicta found in *Kimmie v. Terminal Railroad Association of St. Louis*, 344 Mo. 412, 126 S.W.2d 1197 (1939), which reads the attorney's lien to include only those fees for services as such. The court in Kimmie held that an attorney under suspension had no lien on funds recovered as his suspension was akin to a voluntary abandonment of the case. Since the court did not find a lien in this case the remarks concerning what was eligible for the lien were *obiter* and of no legal force. This court is not bound by that interpretation of the statute, as the authority of a decision is limited to points of law raised in the record, considered by the court and are necessary in that court's decision. *Parker v. Bruner*, 683 S.W.2d 265 (Mo. banc 1985), *cert. denied*, 474 U.S. 827, 106 S.Ct. 88, 88 L.Ed.2d 72 (1985).

The Department of Social Services also cites *Koch–Laumand Contracting, Inc. v. May Department Stores Company*, 623 S.W.2d 52 (Mo.App.1981). This case is also inapplicable as it dealt with a dispute over the definition of the term "legal fees" in a contract action. It did not deal with the construction of § 484.130, RSMo 1986, nor is the term "legal fees" used in the statute, but rather the term "compensation."

The statutory attorney's lien includes those expenses, necessarily and reasonably incurred by Strong & Wooddell on Ganaway's behalf.[2] Strong & Wooddell presented a list of expenses totaling $128,135.27. The total amount of the lien on this money then comes to $181,689.24 (40% of $133,-884.93 or $53,553.97, plus the $128,135.27 in expenses). This total exceeds the amount paid into the court by Shelter Mutual Insurance Company. Thus, the trial court erred in awarding $1,150 to the Department of Social Services as the attorney's lien in § 484.130, RSMo 1986, expressly overrides the Department's right of subrogation as provided by § 208.215.6, RSMo 1986. Accordingly, we reverse that portion of the order awarding the sum of $1,150 to the Missouri Department of Social Services and enter judgment in favor of Ganaway's attorneys pursuant to Rule 84.14 for the entire sum of $133,884.93 paid into the court by Shelter Mutual Insurance Company.

All concur.

---

**2.** Several other jurisdictions have also held that expenses are included in the attorney's lien. *See, e.g., Lazlo v. State Farm Fire & Casualty Co.,* 796 F.2d 807 (5th Cir.1986); *Byram v. Miner,* 47 F.2d 112 (8th Cir.1931), *cert. denied,* 283 U.S. 854, 51 S.Ct. 648, 75 L.Ed. 1461 (1931). *Equifax v. Luster,* 463 F.Supp. 352 (E.D.Ark.1978); *Peoples National Bank of Washington v. King,* 697 S.W.2d 344 (Tenn.1985).