SHIRLEY'S REALTY, INC., Plaintiff,

v.

Adrian HUNT and Cynthia
Hunt, Appellants,

Richard Riley, Respondent,

Dale Owens, Individually, and A+
Realty, Inc., Defendants.

No. WD 63583.

Missouri Court of Appeals,
Western District.

April 26, 2005.

Martin M. Bauman, St. Joseph, MO, for appellants.

Beverly Jones, Tarkio, W. Douglas Thomson, Maryville, Brian M. Bartalos, Kansas City, MO, for respondents.

Before HOLLIGER, P.J., BRECKENRIDGE and ELLIS, JJ.

PATRICIA BRECKENRIDGE, Judge.

Adrian Hunt and Cynthia Hunt appeal the trial court's grant of summary judgment in favor of Richard Riley on the Hunts' petition for breach of contract. On appeal, the Hunts argue that the trial court incorrectly measured damages in determining that they suffered no damages. The Hunts further argue that the trial court erred in failing to find that they suffered special damages. Additionally, Mr. Riley requests attorney's fees on appeal. This court finds that, although the undisputed evidence establishes that the Hunts are not entitled to actual damages, a genuine issue of material fact remains as to whether they are entitled to nominal damages. Therefore, summary judgment in favor of Mr. Riley is reversed, and the cause is remanded. Additionally, because Mr. Riley has failed to demonstrate that he is entitled to attorney's fees under the contract, his motion for attorney's fees on appeal is denied.

**Factual and Procedural Background**

When reviewing summary judgments, this court reviews the record, and any reasonable inferences from the record, "in the light most favorable to the party against whom judgment was entered." *ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). On June 6, 2000, the Hunts contracted with Mr. Riley to sell their business real estate property to him. Under the terms of the contract, Mr. Riley agreed to pay $125,000 for the property.

Mr. Riley delivered $5000 in earnest money to Shirley's Realty, who was the Hunts' real estate agent. The contract required that the sale was to close on or before July 1, 2000, at which time the Hunts would receive the remaining $120,000, less real estate closing costs and adjustments.

Mr. Riley did not close on the real property on or before July 1, 2000. The Hunts attempted to find another buyer for the property after Mr. Riley failed to perform, but their mortgage holder foreclosed on the property before the Hunts could find another buyer. The property was sold at a foreclosure sale on August 2, 2000, for $84,000.

On July 28, 2000, Shirley's Realty filed a petition for interpleader, in which it sought disposition of the $5000 in earnest money Mr. Riley had deposited. The trial court subsequently discharged Shirley Realty from any liability with respect to the $5000 in earnest money. The Hunts and Mr. Riley were enjoined from proceeding any further against Shirley's Realty in connection with the real estate transaction.

On January 9, 2001, the Hunts filed a first amended cross-petition for breach of contract against Mr. Riley. In the cross-petition, the Hunts alleged that Mr. Riley failed to perform under the contract, and his non-performance caused them to suffer damages in the amount of $42,000. In turn, Mr. Riley filed a third-party petition against Dale Owens and A+ Realty, alleging claims of breach of contract, negligence, and breach of fiduciary duty. Dale Owens and A+ Realty filed a motion for partial summary judgment on the basis that the Hunts had no valid breach of contract claim against Mr. Riley and, therefore, Mr. Riley had no valid claim against Dale Owens and A+ Realty. On October 3, 2002, the trial court granted Dale Owens and A+ Realty's motion for partial summary judgment.

On October 15, 2002, Mr. Riley filed a motion for summary judgment on the Hunts' breach of contract claim against him. In his motion, he alleged that he was entitled to judgment as a matter of law because, in an action for breach of a real estate contract, the seller's measure of damages is the difference between the contract price and the market value of the property on the date the contract was to be performed. In his statement of undisputed facts, Mr. Riley alleged that the Hunts admitted that the $42,000 damages they were seeking represented the equity they had in the property, not the difference in the contract price and the fair market value on the date the contract was to be performed. Additionally, Mr. Riley alleged that the Hunts admitted that the fair market value of the property on the date the contract was to be performed was $125,000, which was the same as the contract price. Thus, since the evidence conclusively showed that the fair market value on the date the contract was to be performed was the same as the contract price, Mr. Riley contended that the Hunts had suffered no damages.

In their response to Mr. Riley's motion for summary judgment, the Hunts admitted all of Mr. Riley's undisputed facts. In addition, the Hunts offered Ms. Hunt's affidavit. In her affidavit, Ms. Hunt alleged that she and her husband had performed all of their obligations under the contract, but Mr. Riley did not perform his obligations. After Mr. Riley failed to perform, the Hunts did not have the opportunity to market the property to obtain a price different than that obtained at the foreclosure sale. Ms. Hunt alleged that, because of Mr. Riley's nonperformance of the contract, the property was sold at the foreclosure sale for $84,000. According to Ms. Hunt, Mr. Riley's nonperformance caused the Hunts to suffer damages in the amount of $39,104.39, less the funds held

by the court. The $39,104.39 represents the difference between the contract price of $125,000 and the total amount, including the purchase price and a distribution after expenses, the Hunts received at the fore-closure sale, which was $85,895.61.

On November 19, 2002, the trial court granted Mr. Riley's motion for summary judgment against the Hunts.[1] The Hunts filed this appeal.

## Standard of Review

■ Appellate review of a summary judgment is *de novo*. *ITT*, 854 S.W.2d at 376. This court's criteria for ascertaining the propriety of summary judgment are the same as those that a trial court uses initially. *Id.* This court does not defer to the trial court's order granting summary judgment because the trial court's initial judgment is based on the record submitted and amounts to a decision on a question of law. *Id.* Summary judgment is appropri-ate where the moving party establishes that no genuine issue of material fact ex-ists and the party has a right to judgment as a matter of law. *Id.* at 378.

■ For movants who are the defending parties in a lawsuit, the prima facie show-ing required by Rule 74.04 is "necessarily different." *Id.* at 381. A defending party may establish a right to judgment, as a matter of law, by showing:

(1) facts that negate *any one* of the claimant's elements facts, (2) that the non-movant, after an adequate period of discovery, has not been able to produce,

and will not be able to produce, evidence sufficient to allow the trier of fact to find the existence of *any one* of the claim-ant's elements, or (3) that there is no genuine dispute as to the existence of *each* of the facts necessary to support the movant's properly-pleaded affirma-tive defense.

*Id.*

## Genuine Issue of Material Fact Remains

■ In their first point, the Hunts argue that the trial court incorrectly mea-sured damages and, therefore, erred in determining that they would not be able to prove damages on their breach of contract claim.[2] "To make a claim for breach of contract, 'the plaintiff must show the exis-tence of a contract or agreement and the terms of that agreement, that the plaintiff performed or tendered performance, that the defendant did not perform, and that the plaintiff was thereby damaged.'" *Western Sur. Co. v. Intrust Bank, N.A.*, 20 S.W.3d 566, 571 (Mo.App.2000) (citation omitted). Where, as in this case, "the seller of real estate brings suit for breach of contract against the buyer, the appro-priate measure of damages is the differ-ence between the contract price and the market value of the property on the date the sale should have been completed." *Gilmartin Bros., Inc. v. Kern*, 916 S.W.2d 324, 332 (Mo.App.1995).

The parties agree that the contract price of the property was $125,000. And, the

1. The record indicates that, in his answer to the Hunts' first amended petition for breach of contract, Mr. Riley included a cross-peti-tion against the Hunts for breach of contract. This cross-petition was not made part of the record on appeal. After the court granted Mr. Riley's summary judgment motion on the Hunts' breach of contract claim against him, Mr. Riley moved to dismiss, without preju-dice, his breach of contract claim against the Hunts. The court granted the motion.

2. Although the trial court did not state its reason for granting summary judgment in fa-vor of Mr. Riley, this court will presume it was on the basis stated in Mr. Riley's motion. *Cent. Mo. Elec. Coop. v. Balke*, 119 S.W.3d 627, 635 (Mo.App.2003). The sole basis for summary judgment asserted in Mr. Riley's motion was that the evidence conclusively established that the Hunts had suffered no damages.

Hunts admit that the fair market value of the property on July 1, 2000, the date the sale should have been completed, was at least $125,000.[3] Nevertheless, the Hunts argue that, in determining the "true measure of damages," the trial court should have considered that the property was sold at a foreclosure sale one month later. The Hunts contend that the trial court should have found that the fair market value of the land was either $84,000, which was the amount of the winning bid at the foreclosure sale, or $85,895.61, which was the amount of the net proceeds of the foreclosure sale.

The conditions of a foreclosure sale are not conducive to achieving a price that reflects the fair market value of property. *See Smith v. Snodgrass,* 747 S.W.2d 743, 747 (Mo.App.1988). This is because "[f]air market value is the price at which the property could be sold by a willing seller to a buyer who is under no compulsion to buy." *Wasson v. Schubert,* 964 S.W.2d 520, 526 (Mo.App.1998). "It is well known that property, when sold at a forced sale, usually does not bring its full value. Such sales have the potential of bringing only a fraction of the fair market value." *Snodgrass,* 747 S.W.2d at 747 (citation omitted). The Hunts were not willing sellers at the foreclosure sale. Indeed, in their response to the motion for summary judgment, the Hunts state that they were "forced into a foreclosure sale." Because the price obtained at the foreclosure sale was not persuasive evidence of the property's fair market value, the trial court did not err in failing to rely on it in determining actual damages.

The only evidence of the property's fair market value at the time the contract was to be performed was the Hunts' admission that the fair market value on July 1, 2000, was $125,000. Since there is no difference between this price and the contract price, the Hunts' actual damages are zero. *See Gilmartin Bros.,* 916 S.W.2d at 332. That the Hunts may be unable to prove actual damages, however, does not constitute a negation of the element of damages on their breach of contract claim. *See Hanna v. Darr,* 154 S.W.3d 2, 5 (Mo.App.2004). In Missouri, "[n]ominal damages are available where a contract and its breach are established." *Dierkes v. Blue Cross & Blue Shield of Mo.,* 991 S.W.2d 662, 669 (Mo. banc 1999) (citing *Wasson,* 964 S.W.2d at 526). Nominal damages are available upon proof of the contract and its breach, regardless of whether actual damages have been proven. *Hanna,* 154 S.W.3d at 5 n. 2. *See also Wasson,* 964 S.W.2d at 526.

Although the record on summary judgment indicates that the parties agree that a contract was formed, the parties do not agree on which party breached the contract. The record indicates that Mr. Riley asserted a claim that the Hunts breached the contract. The evidence in the summary judgment record, viewed in the light most favorable to the Hunts, however, shows that Mr. Riley breached the contract. Thus, a genuine issue of material fact remains as to the element of contract breach—an element which, if the Hunts proved, would permit them to recover at least nominal damages. Mr. Riley has failed to establish that he is entitled to judgment as a matter of law on the Hunts' breach of contract claim. Sum-

---

**3.** In addition to admitting this fact in their brief on appeal, the Hunts admitted it in their response to Mr. Riley's motion for summary judgment. The Hunts also admitted it by failing to respond to Dale Owens and A+ Realty's request for admissions, in which the Hunts were asked to admit or deny that the fair market value of the property on July 1, 2000, was at least $125,000. Rule 59.01(a).

mary judgment in favor of Mr. Riley is reversed, and the cause is remanded.

■ In the Hunts' second point, they claim that the trial court erred in failing to consider special damages in determining whether they suffered damages. "Special damages are 'the natural but not necessary result of the wrongful act.'" *Brown v. Mercantile Bank of Poplar Bluff*, 820 S.W.2d 327, 338 (Mo.App.1991) (citing *Parsons Constr. Co. v. Mo. Pub. Serv. Co.*, 425 S.W.2d 166, 173 (Mo.1968)). Special damages " 'result from the act by reason of the special circumstances of the case.'" *Id.* (citation omitted).

■ The Hunts claim that the loss they incurred by selling their property at a foreclosure sale is an item of special damages they should be entitled to recover. Because of this court's disposition of the Hunts' first point, this court need not decide whether the Hunts are entitled to claim the foreclosure sale loss as an item of special damages. This court does note, however, that the Hunts did not specifically plead this as an item of special damages in their first amended cross-petition. Rule 55.19 requires that items claimed as special damages be specifically pled. A plaintiff in a breach of contract case can recover special damages "if those special damages have been pleaded and made known to the person who breaches the contract." *Allen v. Foster*, 668 S.W.2d 277, 280 (Mo.App.1984). This is an issue that can be addressed on remand.

### No Basis to Award Attorney's Fees on Appeal

Mr. Riley requests an award of his attorney's fees on appeal pursuant to Western District Special Rule XXIX. Special Rule XXIX provides, in pertinent part, that "[a]ny party claiming an amount due for attorney's fees on appeal pursuant to contract, statute or otherwise and which this Court has jurisdiction to consider, must file a separate written motion before submission of the cause." In his written motion to this court, filed before the case was submitted, Mr. Riley asserts that he is entitled to attorney's fees on appeal under Article 18 of the contract, which is titled, "Default and Remedies." The specific provision on which Mr. Riley relies reads, in pertinent part:

> If this Contract does not incorporate mandatory and binding arbitration or if a binding agreement for arbitration of disputes addendum is not subsequently entered into by the parties, and, as a result of default under this Contract, either Seller or Buyer employs an attorney to enforce its rights, the defaulting party shall, unless prohibited by law, reimburse the nondefaulting party for any expenses in connection with this transaction and for reasonable attorney's fees, court costs, and legal expenses incurred by the nondefaulting party in connection with this transaction and the default.

A prerequisite to awarding legal fees to Mr. Riley under this provision is a determination that the party from whom the attorney's fees are sought, the Hunts, defaulted on the contract. As this court has already found, a genuine issue of material fact remains as to which party breached the contract. Without a determination that the Hunts defaulted by breaching the contract, this court has no basis on which to award Mr. Riley attorney's fees. Therefore, his request for attorney's fees on appeal is denied.

The summary judgment is reversed, and the cause is remanded to the trial court for further proceedings consistent with this opinion.

All concur.